Filed 11/19/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>CAL CARTAGE TRANSPORTATION EXPRESS, LLC, et al.,<br><br>    Real Parties in Interest. | B304240<br><br>(Los Angeles County Super. Ct. Nos. BC689320, BC689321, BC689322) |

ORIGINAL PROCEEDINGS; petition for writ of mandate. William F. Highberger, Judge. Petition granted.

Office of the Los Angeles City Attorney, Michael N. Feuer, Kathleen A. Kenealy, Michael J. Bostrom, Danielle L. Goldstein, and Christopher S. Munsey for Petitioner.

Gibson, Dunn & Crutcher, Joshua S. Lipshutz, Christopher D. Dusseault, Michele L. Maryott, Dhananjay S. Manthripragada for Cal Cartage Transportation Express, LLC, K&R Transportation California, LLC, and CMI Transportation, LLC.

1

Scopelitis, Garvin, Light, Hanson & Feary, Christopher C. McNatt, Jr. for CCX2931, LLC, CM2931, LLC, and KRT2931, LLC.

Altshuler Berzon, Stacey Leyton and Andrew Kushner for International Brotherhood of Teamsters as Amicus Curiae on behalf of Petitioner.

Xavier Becerra, Attorney General, Thomas S. Patterson Senior Assistant Attorney General, Tamar Pachter, and Jose A. Zelidon-Zepeda, Deputy Attorneys General for the Attorney General of California as Amicus Curiae on behalf of Petitioner.

Barbara J. Parker, Oakland City Attorney, Maria Bee, Erin Bernstein, Malia McPherson, and Nicholas DeFiesta for City of Oakland as Amicus Curiae on behalf of Petitioner.

Dennis J. Herrera, San Francisco City Attorney, Yvonne Meré, and Molly Alarcon for City and County of San Francisco as Amicus Curiae on behalf of Petitioner.

Horvitz & Levy, Jeremy B. Rosen for The Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Real Parties in Interest.

Ellison, Whalen & Blackburn, Patrick J. Whalen for Western States Trucking Association as Amicus Curiae on behalf of Real Parties in Interest.

Littler Mendelson, Richard H. Rahm for American Trucking Associations, Inc. and California Trucking Association as Amicus Curiae on behalf of Real Parties in Interest.

## INTRODUCTION

Does the Federal Aviation Administration Authorization Act of 1994 (FAAAA) preempt application of California's "ABC" test, originally set forth in *Dynamex Operations W. v. Superior Court* (2018) 4 Cal.5th 903 (*Dynamex*) and eventually codified by Assembly Bill 2257 (AB 2257), to determine whether a federally licensed interstate motor carrier has correctly classified its truck drivers as independent contractors? The FAAAA preempts state laws "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." (49 U.S.C. § 14501 (c)(1).) After surveying the FAAAA's legislative history and relevant federal caselaw, our Supreme Court held the FAAAA does not preempt generally applicable worker-classification laws that do not prohibit the use of independent contractors. (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 785-87 (*Pac Anchor*).) We hold the ABC test, as codified by AB 2257, is such a law, and therefore is not preempted by the FAAAA.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Defendants[2] are federally licensed motor carriers that operate or have operated "'trucking and drayage compan[ies] . . . in and around the Ports of Los Angeles and Long Beach.'" Defendants utilize the services of independent owner-operator truck drivers — independent truckers who lease their

---

1 The factual statements in this section are largely taken from the allegations in the People's complaints and the trial court's January 8, 2020 order.

2 Defendants are Cal Cartage Transportation Express, LLC, CMI Transportation, LLC, K&R Transportation California, LLC, CCX2931, LLC, CM2931, LLC, and KRT2931, LLC.

vehicles and services to a licensed motor carrier to move freight under the motor carrier's operating authority — to perform drayage (defined in the complaints as "the short distance transportation of cargo by truck to and from the ports").

In 2018, in connection with Senate Bill No. 1402,[3] the California Legislature found "California's port drayage drivers are the last American sharecroppers, held in debt servitude and working dangerously long hours for little pay." (Senate Bill No. 1402 (2017-2018 Reg. Sess.) § 1(b).) It cited an investigative report finding "'port trucking companies in Southern California have spent the past decade forcing drivers to finance their own trucks by taking on debt they could not afford.' The investigation found instances where drivers 'end up owing money to their employers – essentially working for free.'" (*Id.*, § 1(c).) The Legislature further found "[d]rayage drivers at California ports are routinely misclassified as independent contractors when they in fact work as employees under California and federal labor laws. A recent report finds that two-thirds of California port drayage drivers fall under this category, and rampant misclassification of drivers contributes to wage theft and leaves drivers in a cycle of poverty." (*Id.*, § 1(f).)

On January 8, 2018, the Los Angeles City Attorney, acting on behalf of the People of the State of California, filed complaints against the defendants in three related cases,[4] alleging two

---

3      Senate Bill No. 1402 amended the California Labor Code to, among other things, require the Division of Labor Standards Enforcement to publicly post the identities of drayage companies with unsatisfied misclassification judgments against them. (Senate Bill No. 1402 (2017-2018 Reg. Sess.) § 2.)

4      The three related cases are: *People v. Cal Cartage Transportation Express LLC, et al.* (Case No. BC689320); *People v. CMI Transportation LLC, et al.* (Case No. BC689321); and *People v. K&R Transportation California LLC, et al.* (Case No. BC689322).

causes of action under the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, et seq. The first cause of action is predicated on defendants' alleged misclassification of truck drivers as independent contractors, and the second on defendants' alleged violations of the federal Truth-in-Leasing Regulations, 49 C.F.R. § 376.1, et seq. The complaints allege defendants misclassified truck drivers as independent contractors and therefore engaged in unfair competition by failing to: (1) pay unemployment insurance taxes (Unemp. Ins. Code, § 976); (2) pay employment training fund taxes (*id.*, § 976.6); (3) withhold state disability insurance taxes (*id.*, § 984); (4) withhold state income taxes (*id.*, § 13020); (5) provide workers' compensation (Lab. Code, § 3700); (6) provide employees with itemized written wage statements (*id.*, § 226) and to maintain and provide employees with records in violation California's Industrial Welfare Commission wage order No. 9-2001, section 7 (Industrial Welfare Commission Wage Order No. 9); (7) reimburse employees for business expenses and losses (Lab. Code, § 2802); and (8) ensure payment of the minimum wage at all times (Lab. Code, § 1194, Industrial Welfare Commission Wage Order No. 9, § 4). Specifically, the People allege defendants deduct from drivers' pay, or fail to reimburse for, work-related expenses including fuel, truck insurance, parking, and routine maintenance costs, amounting to tens of thousands of dollars per year.

When the People filed their complaints, the test for worker classification in California was governed by *S.G. Borello & Sons v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*).[5] In April 2018, our Supreme Court decided *Dynamex*, replacing the *Borello* standard with the "ABC" test for claims brought under California's Wage Orders. The ABC test requires a

---

5      The *Borello* standard is a multi-factor test, not to be ". . . 'applied mechanically as separate tests[,]'" to determine whether a worker is an employee or an independent contractor. (*Borello, supra*, 48 Cal.3d at p. 351.)

worker be classified as an employee unless: (A) "the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact[;]" (B) "the worker performs work that is outside the usual course of the hiring entity's business[;] and" (C) "the worker is customarily engaged in an independently established trade, occupation, or business[.]" (*Dynamex, supra*, 4 Cal.5th at p. 964.)

In 2019, the Legislature passed and the Governor signed into law Assembly Bill 5 (AB 5). Effective January 1, 2020, AB 5 codified (as Labor Code section 2750.3) the ABC test and expanded its reach to apply to all claims under the Labor Code and the Unemployment Insurance Code. (Stats. 2019, ch. 296, § 2.) AB 5 also included exemptions that were not part of the *Dynamex* test, including an exemption for "business-to-business contracting relationship[s]."

On September 4, 2020, however, after the petition in these related cases was filed, the Legislature passed and the Governor signed AB 2257, which repealed and replaced the statutory changes enacted by AB 5. (Stats. 2020, ch. 38, § 2.) AB 2257 revised certain exemptions to the ABC test, including the business-to-business exemption, and created additional exemptions. (Lab. Code § 2775, et seq.) Under Labor Code section 2775, subdivision (a)(3), "[i]f a court of law rules that the [ABC] test . . . cannot be applied to a particular context . . . then the determination of employee or independent contractor status in that context shall instead be governed by [*Borello*]."[6] Because the parties disagreed whether the ABC test or the *Borello*

---

6     On September 16, 2020, we requested supplemental briefing from the parties to address the significance, if any, of the revisions to the statutes put in place by AB 2257. We reviewed the supplemental briefs, and, in this opinion, address whether the relevant statutes, as modified by AB 2257, are preempted by the FAAAA.

standard applies to the People's misclassification-based UCL claims, the trial court permitted defendants to submit a motion in limine, before substantial discovery or filing of dispositive motions, addressing (1) whether *Dynamex* is preempted by federal law; and (2) whether *Dynamex* can be applied retroactively.[7] Following two rounds of briefing and two hearings, the trial court directed both parties to lodge proposed orders. After argument at the second hearing, the trial judge noted he was "tending away from finding preemption[,]" but that his indecision "would tend to indicate why it's a very suitable matter for appeal." Ultimately, the court adopted defendants' proposed order without significant modification, granting in part defendants' motion in limine. It held "[b]ecause Prong B of the ABC Test under both *Dynamex* and AB 5 prohibits motor carriers from using independent contractors to provide transportation services, the ABC Test has an impermissible effect on motor carriers' 'price[s], route[s], [and] service[s]' and is preempted by the FAAAA." It certified its ruling for writ review pursuant to Code of Civil Procedure section 166.1.

The People petitioned this court for a writ of mandate directing respondent court to vacate its order or, at a minimum, to issue an alternative writ or order to show cause directing the real parties in interest to show cause why the writ should not issue. We summarily denied the petition. The California Supreme Court granted the People's petition for review and transferred the matter back to this court with directions to vacate our order

---

7       Although used most often to resolve questions of admissibility of evidence, use of a motion in limine to secure an early ruling on a potentially dispositive legal issue can be a useful tool in the management of complex litigation. Trial courts have inherent powers to employ motions in limine to dispose of claims in appropriate circumstances. (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1595; *Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 375-376.)

denying mandate and to issue an order directing respondent superior court to show cause why the relief sought in the petition should not be granted. We complied, issuing an order to show cause on July 10, 2020. Real parties in interest filed a return, and the People filed a reply. We also granted the applications of the International Brotherhood of Teamsters, the California Attorney General, the City of Oakland, and the City and County of San Francisco to file amicus briefs in support of the People, and The Chamber of Commerce of the United States of America, American Trucking Associations, Inc. and California Trucking Association, and Western States Trucking Association to file amicus briefs in support of defendants.

## DISCUSSION

### A. Standard of Review and Federal Preemption Principles

We review de novo a trial court's decisions regarding preemption and statutory construction. (See, e.g., *Roberts v. United Healthcare Services, Inc.* (2016) 2 Cal.App.5th 132, 142 ["Where, as here, preemption turns on questions of law such as the meaning of a preemption clause or the ascertainment of congressional intent, our review is de novo. [Citations.]"]; *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10 ["federal preemption presents a pure question of law. [Citation.]"].) Also, "[w]hen a motion in limine 'results in the entire elimination of a cause of action or a defense, we treat it as a demurrer to the evidence and review the motion de novo . . . .' [Citation.]" (*Legendary Investors Group No. 1, LLC v. Niemann* (2014) 224 Cal.App.4th 1407, 1411)

"The United States Supreme Court has identified 'two cornerstones' of federal preemption analysis. [Citation.] First, the question of preemption "'fundamentally is a question of

congressional intent.'" [Citations.] If a statute 'contains an express pre-emption clause, our "task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent."' [Citations.] "'Also relevant, however, is the 'structure and purpose of the statute as a whole,' [citation] as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.'" [Citations.]" (*Brown v. Mortensen* (2011) 51 Cal.4th 1052, 1059-1060.)

### B.    The FAAAA

Our Supreme Court explained the history and purpose of the FAAAA in *Pac Anchor, supra*, 59 Cal.4th at p. 779-782. "'In 1978, Congress "determine[d] that 'maximum reliance on competitive market forces'" would favor lower airline fares and better airline service, and it enacted the [Airline Deregulation Act (ADA)].' [Citation.] 'In order to ensure that the States would not undo federal deregulation with regulation of their own," that Act "included a pre-emption provision" that said "no State . . . shall enact or enforce any law . . . relating to rates, routes, or services of any air carrier.'" [Citation.]" (*Id*. at p. 779.)

In 1980, Congress deregulated trucking with the adoption of the Motor Carrier Act of 1980 (Pub. L. No. 96-296 (July 1, 1980) 94 Stat. 793.) "'In 1994, Congress similarly sought to pre-empt state trucking regulation[]' [citation]" with the adoption of the FAAAA. (*Pac Anchor, supra*, 59 Cal.4th at p. 779.) In doing so, it borrowed language from the ADA and included the following express preemption clause: "Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of

9

law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." (49 U.S.C. § 14501(c)(1).) "Specifically, the FAAAA was intended to prevent state regulatory practices including 'entry controls, tariff filing and price regulation, and [regulation of] types of commodities carried.' (H.R. Rep. No. 103-677, 2d Sess., p. 86 (1994), reprinted in 1994 U.S. Code Cong. & Admin. News, p. 1758)." (*Pac Anchor, supra*, 59 Cal.4th at pp. 779-780.) "The phrase 'related to,'" [in the FAAAA's preemption clause] . . . embraces state laws 'having a connection with or reference to' carrier "'rates, routes, or services,'" whether directly or indirectly. [Citations.]" (*Dan's City Used Cars, Inc. v. Pelkey* (2013) 569 U.S. 251, 260 [133 S.Ct. 179, 185 L.Ed. 2d 909] (*Dan City*).) The FAAAA, however, does not "preempt state laws affecting carrier prices, routes, or services 'in only a "tenuous, remote, or peripheral . . . manner."' [Citations.] (*Id.* at p. 261 (alteration in original).)

The defendants offered no evidence, and the trial court made no factual findings, concerning the impact, if any, of application of the ABC test on motor carriers' prices, routes, and services.[8] To the extent they had a burden to prove more than a tenuous or peripheral impact, rather than simply make arguments, the defendants did not carry it. If we were writing on a clean slate, that would end our inquiry and we would conclude defendants failed to demonstrate that application of the ABC test actually would impact prices, routes, or services. But we are not.

8      The trial court made only one factual finding, stating that in circumstances where defendants "contracted with licensed motor-carriers to transport loads, the cost of such transport was nearly triple the cost of using independent owner-operators for the same route." But that finding is irrelevant to our inquiry. There is no evidence in the record of the pricing impact, if any, of defendants using employees rather than independent contractors, nor of contracting with businesses other than a licensed motor carrier to transport loads.

10

Instead, courts have taken to deciding similar issues on their own, based on something other than facts or expert opinion. For example, in *Pac Anchor* our Supreme Court decided whether an action under California's Unfair Competition Law was preempted by the FAAAA without a developed factual record (the defendants presented the issue in the context of a motion for judgment on the pleadings). (*Pac Anchor*, *supra*, 59 Cal.4th at pp. 775-777.)[9] And so, we turn to the central issue: does the FAAAA preempt application of the ABC test?[10]

_____

9      See also *Schwann v. FedEx Ground Package Sys.* (1st Cir. 2016) 813 F.3d 429, 437, quoting *Mass. Delivery Ass'n v. Coakley* (1st Cir. 2014) 769 F.3d 11, 21 (*Schwann*) ("'[A] statute's "potential" impact on carriers' prices, routes, and services' need not be proven by empirical evidence; rather, courts may 'look[ ] to the logical effect that a particular scheme has on the delivery of services.' [Citations.]")

10     The same issue is pending in the Ninth Circuit in *California Trucking Ass'n, et al. v. Becerra, et al.*, case Nos. 20-55106 and 20-55107. The case was argued and, as of the date of this opinion, is under submission. The First Circuit held prong B of Massachusetts' ABC test (which contains the same language as California's ABC test) is preempted by the FAAAA. (*Schwann*, *supra*, 813 F.3d at p. 440.) The federal district courts are split on the issue. (See, e.g., *Henry v. Cent. Freight Lines, Inc.* (E.D. Cal. June 13, 2019) 2019 U.S. Dist. LEXIS 99594, at p. 19 [holding the FAAAA does not preempt application of the ABC test because the "ABC test is a general classification test that does not apply to motor carriers specifically and does not, by its terms, compel a carrier to use an employee or an independent contractor"]; *Western States Trucking Ass'n v. Schoorl* (E.D. Cal.  2019) 377 F.Supp.3d 1056, 1072-1073 [same]; *Alvarez v. XPO Logistics Cartage LLC* (C.D. Cal. Nov. 15, 2018) 2018 U.S. Dist. LEXIS 208110, at p. 15 [finding the FAAAA preempts the ABC test]; *Valdez v. CSX Intermodal Terminals, Inc.* (N.D. Cal. Mar. 15, 2019) 2019 U.S. Dist. LEXIS 77258, at pp. 24-28 [finding the FAAAA preempts part B of the ABC test].)

## C. The FAAAA Does Not Preempt the ABC Test

Defendants contend prong B of the ABC test makes it impossible for a motor carrier to contract with an owner-operator as an independent contractor, and thus the ABC test is preempted by the FAAAA under the clear terms of *Pac Anchor*. The People counter the ABC test is not preempted because it is a generally applicable employment law that does not prohibit the use of independent contractors, and therefore does not have an impermissible effect on prices, routes, or services. We agree with the People. Our conclusion is compelled by the California Supreme Court's decision in *Pac Anchor*, and the FAAAA's legislative history, as discussed below.

In *Pac Anchor*, the California Supreme Court held the FAAAA did not preempt a claim under the UCL premised on truck drivers being misclassified as independent contractors.[11] The defendants argued the "People's UCL claim will significantly affect motor carrier prices, routes, and services because its application will prevent their using independent contractors, potentially affecting their prices and services." (*Pac Anchor, supra*, 59 Cal.4th at p. 785.) They also contended "if the People's UCL action is successful, they will have to reclassify their drivers as employees, driving up their cost of doing business and thereby affecting market forces." (*Ibid*.) After analyzing the legislative history of the FAAAA and relevant United States Supreme Court, Ninth Circuit, and other precedent, the *Pac Anchor* court rejected the defendants' arguments. (*Id.* at pp. 782-784.) The

---

11     The People's UCL claim here is essentially identical to that in *Pac Anchor*.  Both are premised on an alleged misclassification of truck drivers as independent contractors rather than employees. (See *Pac Anchor, supra*, 59 Cal.4th at p. 776.) At the second hearing in the trial court, the People's counsel noted he used the complaint in *Pac Anchor* "as a model" when drafting one of the complaints in this action.

court reasoned that a "UCL action that is based on an alleged general violation of labor and employment laws does not implicate [Congress's] concerns" about "regulation of motor carriers with respect to the transportation of property[.]" (*Id.* at p. 783.) It further explained: "Defendants' assertion that the People may not prevent them from using independent contractors is correct, but its characterization of the People's UCL claim is not. Nothing in the People's UCL action would prevent defendants from using independent contractors. The People merely contend that if defendants pay individuals to drive their trucks, they must classify these drivers appropriately and comply with generally applicable labor and employment laws." (*Id.* at p. 785) The court also rejected defendants' argument that enforcement of California's general employment laws was contrary to the FAAAA's "deregulatory purpose." (*Id.* at p. 786.) The court explained that while "Congress passed the FAAAA in order to end a patchwork of state regulations[,] . . . nothing in the congressional record establishes that Congress intended to preempt states' ability to tax motor carriers, to enforce labor and wage standards, or to exempt motor carriers from generally applicable insurance laws. [Citations.]" (*Ibid.*)

*Pac Anchor* is dispositive. Like the labor laws examined in that case, the ABC test is a law of general application.[12] The ABC

_____

12     We reject defendants' contention that the ABC test, as codified in AB 2257, is not a law of general application because the law includes exemptions for several occupations and industries. (See, e.g., *Godfrey v. Oakland Port Services Corp.* (2014) 230 Cal.App.4th 1267, 1280 [finding California's meal and rest break laws to be generally applicable – and not preempted by the FAAAA – despite those laws' legislative exemptions].) But we recognize, as did our Supreme Court in *Pac Anchor*, that even laws of general applicability can be preempted if they have a direct effect on carriers' prices, routes, or services. (*Pac Anchor, supra,* 59 Cal.4th at pp. 784-785; *see also Morales v. TWA* (1992) 504 U.S. 374, 386 [112 S.Ct. 2031, 119 L.Ed.2d 157].)

test does not mandate the use of employees for any business or hiring entity. Instead, the ABC test is a worker-classification test that states a general and rebuttable presumption that a worker is an employee unless the hiring entity demonstrates certain conditions. That independent owner-operator truck drivers, as defendants currently use them, may be incorrectly classified, does not mean the ABC test prohibits motor carriers from using independent contractors. The ABC test, therefore, is not the type of law Congress intended to preempt. (See *Pac Anchor, supra*, 59 Cal.4th at p. 787 [noting the congressional record showed "Congress disapproved of a California law that denied advantageous regulatory exemptions to motor carriers who used a large proportion of independent contractors[,]" but unlike that law, "the People's UCL action does not encourage employers to use employee drivers rather than independent contractors. Defendants are free to use independent contractors as long as they are properly classified[.]"].)

 *Pac Anchor* also relied on the Ninth Circuit's discussion in *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca* (9th Cir. 1998) 152 F.3d 1184 (*Mendonca*) of indirect evidence of Congress's intent when it enacted the FAAAA. In *Mendonca*, the court held California's generally applicable prevailing wage laws were not preempted by the FAAAA in part because several states Congress identified as not having laws regulating interstate trucking had prevailing wage laws in place at the time the FAAAA was enacted. (*Pac Anchor, supra*, 59 Cal.4th at p. 786.) *Pac Anchor* noted "[s]imilarly, eight out of the 10 jurisdictions identified in *Mendonca* had generally applicable laws governing when a worker is an independent contractor (or the equivalent) and when a worker is an employee. [Citations.] Thus, even though the People's UCL action may have some indirect effect on defendants' prices or services, that effect is "'too tenuous, remote [and] peripheral . . . to have pre-emptive effect.'" [Citation.]" (*Ibid*.) Notably, one of the statutes *Pac Anchor*

14

identified, Wis. Stat. § 102.07, contains similar language to prong B of California's ABC test. (Compare Wis. Stat. § 102.07, subd. (8)(a) (1994) ["Except as provided in par. (b) and (bm), every independent contractor is, for the purpose of this chapter, an employee of any employer under this chapter for whom he or she is performing service in the course of the trade, business, profession or occupation of such employer at the time of the injury"] and Lab. Code, § 2775, subd. (b)(1)(B) [a worker is an employee unless the hiring entity can demonstrate "[t]he person performs work that is outside the usual course of the hiring entity's business."].) As noted in *Pac Anchor*, this legislative history suggests Congress did not intend to preempt worker-classification laws like the ABC test.

Moreover, that the statutory scheme codified by AB 2257 is not one that prohibits motor carriers from using independent contractors (and therefore, does not have an impermissible effect on prices, routes, or services) is further supported by the business-to-business exemption in Labor Code section 2776. Under that exemption, the ABC test does not apply to a business-to-business contracting relationship, including contracts between licensed motor carriers and independent owner-operators who may operate as sole proprietorships, LLC's, or other business entities, if the hiring entity demonstrates a list of criteria is satisfied. (Lab. Code, § 2776, subd. (a).) If an individual or entity qualifies for the exemption, "the determination of employee or independent contractor status [of the individual doing the work] shall [ ] be governed by [the *Borello* standard]."[13] (*Ibid.*)

---

13     The full text of the business-to-business exemption states: "Section 2775 and the holding in Dynamex do not apply to a bona fide business-to-business contracting relationship, as defined below, under the following conditions: [¶] (a) If an individual acting as a sole proprietor, or a business entity formed as a partnership, limited liability company, limited liability partnership, or corporation ('business service provider') contracts

15

to provide services to another such business or to a public agency or quasi-public corporation ('contracting business'), the determination of employee or independent contractor status of the business services provider shall be governed by Borello, if the contracting business demonstrates that all of the following criteria are satisfied: [¶] (1) The business service provider is free from the control and direction of the contracting business entity in connection with the performance of the work, both under the contract for the performance of the work and in fact. [¶] (2) The business service provider is providing services directly to the contracting business rather than to customers of the contracting business. This subparagraph does not apply if the business service provider's employees are solely performing the services under the contract under the name of the business service provider and the business service provider regularly contracts with other businesses. [¶] (3) The contract with the business service provider is in writing and specifies the payment amount, including any applicable rate of pay, for services to be performed, as well as the due date of payment for such services. [¶] (4) If the work is performed in a jurisdiction that requires the business service provider to have a business license or business tax registration, the business service provider has the required business license or business tax registration. [¶] (5) The business service provider maintains a business location, which may include the business service provider's residence, that is separate from the business or work location of the contracting business. [¶] (6) The business service provider is customarily engaged in an independently established business of the same nature as that involved in the work performed. [¶] (7) The business service provider can contract with other businesses to provide the same or similar services and maintain a clientele without restrictions from the hiring entity. [¶] (8) The business service provider advertises and holds itself out to the public as available to provide the same or similar services. [¶] (9) Consistent with the nature of the work, the business service provider provides its own tools, vehicles, and equipment to perform the services, not including any proprietary materials that may be necessary to perform the services under the contract. [¶] (10) The business service provider can negotiate its own rates. [¶] (11) Consistent with the nature of the work, the business service provider can set

16

Defendants argue independent owner-operators can never meet several of the requirements in the business-to-business exemption, and thus, the exemption does not save the statutes codified by AB 2257 from preemption. We are unpersuaded.

First, defendants argue the licensing requirement of the exemption makes it impossible for independent owner-operators to qualify for the exemption: "If the work is performed in a jurisdiction that requires the business service provider to have a business license or business tax registration, the business service provider has the required business license or business tax registration." (Lab. Code, § 2776, subd. (a)(4).) Defendants claim this provision requires truck drivers to have a federal motor carrier operating license, but "[i]ndependent owner-operator truck drivers, by definition *lack* motor carrier licenses and thus cannot meet this requirement." We agree with the People, however, that the more natural construction of a "business license" is that the phrase refers to the licenses issued by local governments ("jurisdictions" within the State of California) for health and safety regulation and tax purposes. Indeed, other subdivisions of AB 2257 distinguish between "business license[s]" and other permits and licenses. (See, e.g., Lab. Code, § 2781, subds. (c) & (h)(1)(C) [for the construction industry exemption, the contractor must demonstrate, among other requirements,

---

its own hours and location of work. [¶] (12) The business service provider is not performing the type of work for which a license from the Contractors' State License Board is required, pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code. [¶] (b) When two bona fide businesses are contracting with one another under the conditions set forth in subdivision (a), the determination of whether an individual worker who is not acting as a sole proprietor or formed as a business entity, is an employee or independent contractor of the business service provider or contracting business is governed by Section 2775. [¶] (c) This section does not alter or supersede any existing rights under Section 2810.3." (Lab. Code, § 2776.)

17

that the "subcontractor has the required business license or business tax registration" and the "subcontractor utilizes its own employees to perform the construction trucking services, unless the subcontractor is a sole proprietor who operates their own truck to perform the entire subcontract and holds a valid motor carrier permit issued by the Department of Motor Vehicles."].)

Second, the business-to-business exemption applies only if the owner-operator is "providing services directly to the [motor carrier] rather than to customers of the [motor carrier]." (Lab. Code, § 2776, subd. (a)(2).) Defendants contend this condition is impossible for an owner-operator to meet because an owner-operator contracting with a motor carrier necessarily is providing services to the motor carrier's customers by moving the customer's goods at the customer's direction. But defendants provide no support for their strained reading of this provision. Motor carriers — not the motor carriers' customers — could contract with owner-operators (or other business entities meeting the requirements of the business-to-business exemption), direct their actions, and pay them. Services would be provided by the owner-operators directly to the motor carriers, notwithstanding that those services would include moving freight belonging to the motor carrier's customers.

Moreover, defendants offered no evidence demonstrating it would be impossible to meet the requirements of the business-to-business exemption. Indeed, the only evidence submitted in the trial court (attached to the People's counsel's declaration in support of their opposition to defendants' motion in limine) indicates at least one defendant does not operate any of its own trucks, and instead contracts not only with independent truckers, but also with trucking companies. Those trucking companies, referred to as "outside carriers" or "outside brokers," are legally organized business entities and appear to be among the kinds of businesses contemplated by the business-to-business exemption.

18

We therefore conclude defendants have not demonstrated, as they must under *Pac Anchor*, that application of the ABC test prohibits motor carriers from using independent contractors or otherwise directly affects motor carriers' prices, routes, or services. Nothing in *Pac Anchor* nor the FAAAA's legislative history suggests Congress intended to preempt a worker-classification test applicable to all employers in the state.

**DISPOSITION**

Let a peremptory writ of mandate issue directing respondent court to vacate its January 8, 2020 order granting in part defendants' motion in limine, and enter a new order denying that motion because the statutory amendments implemented by AB 2257 are not preempted by the FAAAA. We express no view on the two alternative arguments raised in defendants' motion in limine, which respondent court denied without prejudice, *i.e.*, whether the ABC test violates the Dormant Commerce Clause or that it may not be applied retroactively. The People are awarded their costs in this original proceeding.

**CERTIFIED FOR PUBLICATION**

CURREY, J.

We concur:

MANELLA, P.J.

COLLINS, J.

20