RAMIREZ P. J.
*854 *1098 Defendant Sara Salcido was in the business of providing immigration services - typically, obtaining visas for her clients that would allow them to stay in the United States legally. Under the Immigration Consultant Act ( Bus. & Prof. Code, §§ 22440 - 22449 ) (Act), with certain exceptions, it is illegal for a person to act as an "immigration consultant" (as defined in the Act) unless he or she has complied with a host of consumer protection requirements, such as passing a background check and filing a bond. Defendant failed to comply with these.
As a result, in a bench trial, defendant was convicted on one count of unlawfully engaging in the business of an immigration consultant, a misdemeanor. ( Bus. & Prof. Code, §§ 22440, 22441.) The People argued, however, that each time defendant took money from a client in exchange for providing immigration services, she was committing theft by false pretenses, because she was not a legally qualified immigration consultant under state law. The trial court agreed; thus, it also convicted her on six counts of grand theft ( Pen. Code, §§ 484, 487, subd. (a) ) and two counts of petty theft ( Pen. Code, §§ 484, 488 ). It dismissed two additional counts of grand theft as time-barred. Defendant was placed on probation for five years.
In the published portion of this opinion, we will hold that federal law does not preempt the application of the Act to defendant. In the unpublished portion, we will reject defendant's other contentions. Accordingly, we will affirm.
I
FACTUAL BACKGROUND
A. Count 2: Rigoberto S.
In September 2012, Rigoberto S. paid defendant $4,480 to obtain a work permit and some kind of visa. He had seen an ad saying that she provided *1099 immigration services. He met with her in her office. However, he never received any documentation from the United States Citizenship and Immigration Services (USCIS) or from defendant. He contacted defendant, but she had no explanation, so he sued her in small claims court.
Defendant testified that she spent some 14 to 20 hours, across some six months, on Rigoberto S.'s case. Nine months after he first contacted her, she discovered that he had previously been deported. She did not file anything with the USCIS, because if she had, he would have been deported automatically. If she had known he had previously been deported, she would never have taken his case. She started paying back his money, in installments; by the time of the preliminary hearing, she had repaid $1,800.
B. Count 3: Patricia F.
In October 2011, Patricia F. paid defendant $3,000 to obtain a U visa.[1] They met at defendant's office.
*855 Defendant testified that she put in 50 hours on the case. It took her over a year to get the necessary signature from the relevant police department. She never actually filed anything for Flores because Flores saw "a lot of ... bad comments on Facebook" and fired her.
C. Count 4: Ivonne G.
In June or July 2013, Ivonne G. paid defendant $3,000 to obtain a U visa. She had seen an ad for defendant's immigration services. They met at defendant's office.
Defendant testified that she had worked on Ivonne G.'s case for about a year and had done "some forms" when she was arrested.
D. Count 6: Araceli C.
In April 2014, Araceli C. paid defendant a down payment to help her obtain a green card based on marriage to a United States citizen. Over time, she paid defendant a total of $9,265. On defendant's advice, she divorced her husband and married her live-in boyfriend; defendant handled this paperwork. She learned from the USCIS, however, that defendant had done nothing about the green card.
Defendant testified that she spent 60 hours on the case before Araceli C. fired her.
*1100 E. Count 7: Sofia L.
In 2012, Sofia L. paid defendant a down payment to obtain U visas for herself and her children. She met with defendant at defendant's office. Over time, she paid defendant a total of $5,760. The USCIS determined that she did not qualify and that it was going to deny her petition; as of the preliminary hearing, however, it had not actually done so, due to its backlog.
Defendant testified that she had spent 300 hours on the case.
F. Count 8: Javier O.
In 2014, Javier O. paid defendant $4,580 to assist him with obtaining a work permit. He met with her at her office. He never received any documentation indicating that she had done anything.
Defendant testified that she spent 30 hours on his case. She filed some paperwork with the USCIS and spoke to a USCIS supervisor.
G. Count 9: Maria T.
In 2014, Maria T. paid defendant a down payment to assist her in obtaining a U visa or similar permit. She had seen an ad for defendant's immigration services. She met with defendant at defendant's office. Over time, she paid defendant a total of $800.
Defendant testified that she spent 20 hours on the case. She obtained the necessary signature of the relevant police department and filed some papers with the USCIS. The case was still pending. However, Maria T. fired her and sued her in small claims court.
H. Count 10: Ilsia M.
At the end of 2014 or the beginning of 2015, Ilsia M. paid defendant $300 to assist her in obtaining a U visa. She never received any documentation from the government.
Defendant testified that she spent four to six hours on the case. She prepared some forms, but she could not send them in because she was arrested.
I. Additional Information Relevant to All Counts
Defendant maintained an office in Cathedral City. Signs outside advertised the services that she provided, including immigration services.
*1101 Defendant admitted that she had been acting as an immigration consultant since *856 2007. She also admitted that she was not an attorney, though she was a paralegal. She admitted knowing that she was required to have a background check and to post a bond, but she had not done either.
Defendant testified that she learned in either September or November 2013 that she was required to be registered with the state and to post a bond. (At the preliminary hearing, however, she testified that she did not know about the background check until 2015.) She did not post a bond because she could not afford it.
It was stipulated that, at all relevant times, defendant engaged in the business or acted in the capacity of an immigration consultant, for compensation, even though she had not passed the required background check or posted the required bond. It was also stipulated that, at all relevant times, defendant held herself out as legally authorized to act as an immigration consultant. With respect to the last two victims - Maria T. and Ilsia M. - it was additionally stipulated that defendant knew at the time that she had failed to comply with the Act.
Finally, it was stipulated that defendant received compensation greater than $950 in connection with the grand theft counts, and less than $950 in connection with the petty theft counts.
II
FEDERAL PREEMPTION
Defendant contends that the Act is preempted by federal law. She demurred to the complaint on this ground. In any event, federal preemption can be raised for the first time on appeal. ( Town of Atherton v. California High-Speed Rail Authority (2014) 228 Cal.App.4th 314, 331, 175 Cal.Rptr.3d 145.)
"We apply a de novo standard of review ... because federal preemption presents a pure question of law [citation]." ( Farm Raised Salmon Cases (2008) 42 Cal.4th 1077, 1089, fn. 10, 72 Cal.Rptr.3d 112, 175 P.3d 1170.)
A. General Preemption Principles .
" ' "The supremacy clause of the United States Constitution ... vests Congress with the power to preempt state law." [Citations.] Similarly, federal agencies, acting pursuant to authorization from Congress, can issue regulations that override state requirements. [Citations.] Preemption is foremost a *1102 question of congressional intent: did Congress, expressly or implicitly, seek to displace state law?' [Citation.]" ( Solus Industrial Innovations, LLC v. Superior Court (2018) 4 Cal.5th 316, 331, 228 Cal.Rptr.3d 406, 410 P.3d 32.)
Our Supreme Court has "identified several species of preemption." ( Solus Industrial Innovations, LLC v. Superior Court , supra , 4 Cal.5th at p. 332, 228 Cal.Rptr.3d 406, 410 P.3d 32.) "Express preemption occurs when Congress defines the extent to which its enactments preempt state law. [Citation.] Conflict preemption is found when it is impossible to comply with both state and federal law simultaneously. [Citation.] Obstacle preemption occurs when state law stands as an obstacle to the full accomplishment and execution of congressional objectives. [Citation.] Field preemption applies when federal regulation is comprehensive and leaves no room for state regulation. [Citation.]" ( People ex rel. Harris v. Pac Anchor Transp., Inc. (2014) 59 Cal.4th 772, 777-778, 174 Cal.Rptr.3d 626, 329 P.3d 180.)
Ordinarily, there is a presumption against preemption. ( Solus Industrial Innovations, LLC v. Superior Court , supra , 4 Cal.5th at p. 332, 228 Cal.Rptr.3d 406, 410 P.3d 32.) "The presumption is founded on 'respect for the States as "independent sovereigns in our federal system" '; that respect requires courts 'to assume that "Congress does not cavalierly *857 pre-empt state-law causes of action." ' [Citation.] The strength of the presumption is heightened in areas where the subject matter has been the longstanding subject of state regulation in the first instance; where federal law touches 'a field that " 'has been traditionally occupied by the States,' " ' the party seeking to show preemption 'bear[s] the considerable burden of overcoming "the starting presumption that Congress does not intend to supplant state law." ' [Citations.]" ( Quesada v. Herb Thyme Farms, Inc. (2015) 62 Cal.4th 298, 313, 195 Cal.Rptr.3d 505, 361 P.3d 868.)
Defendant argues that this presumption does not apply here, because the Act implicates foreign affairs - an area not traditionally occupied by the states. (See Viva! International Voice for Animals v. Adidas Promotional Retail Operations, Inc. (2007) 41 Cal.4th 929, 938-939 & fn. 5, 63 Cal.Rptr.3d 50, 162 P.3d 569 [declining to decide whether presumption applies when state law "touch[es] on matters implicating foreign affairs"].)
We disagree, on the authority of In re Jose C . (2009) 45 Cal.4th 534, 87 Cal.Rptr.3d 674, 198 P.3d 1087. There, our Supreme Court said: "[T]he general presumption against preemption [citation] ... applies even in the context of immigration law [citation] ...." ( Id . at p. 551, 87 Cal.Rptr.3d 674, 198 P.3d 1087.)
It explained: "The '[p]ower to regulate immigration is unquestionably exclusively a federal power.' [Citations.] ...
"While the immigration power is exclusive, it does not follow that any and all state regulations touching on aliens are preempted. [Citations.] Only if the *1103 state statute is in fact a 'regulation of immigration,' i.e., 'a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain' [citation], is preemption structural and automatic. Otherwise, the usual rules of statutory preemption analysis apply; state law will be displaced only when affirmative congressional action compels the conclusion it must be. [Citation.]" ( In re Jose C ., supra , 45 Cal.4th at p. 550, 87 Cal.Rptr.3d 674, 198 P.3d 1087 ; see also DeCanas v. Bica (1976) 424 U.S. 351, 354-355, 96 S.Ct. 933, 47 L.Ed.2d 43.)
Here, the specification of who may provide immigration-related services, while undoubtedly a matter of federal interest and a proper subject of federal regulation, does not "regulate[ ] who may enter or remain in the United States." (See In re Jose C ., supra , 45 Cal.4th at p. 550, 87 Cal.Rptr.3d 674, 198 P.3d 1087.) At the same time, "[t]he states' historic police powers include the regulation of consumer protection .... [Citations.]" ( Gibson v. World Savings & LoanAssn. (2002) 103 Cal.App.4th 1291, 1300, 128 Cal.Rptr.2d 19.) Accordingly, the presumption against preemption applies fully here.[2]
B. Relevant Federal Law .
Congress has authorized the Secretary of Homeland Security to "establish such regulations ... as he deems necessary for carrying out his authority ...." ( 8 U.S.C. § 1103(a)(3).) Pursuant to this authorization, the Department of Homeland Security (DHS) has adopted a set of regulations specifying who can provide representation before the United States Citizen and Immigration Services (USCIS). ( 8 C.F.R. §§ 1.1, 1.2, 292.1 (2018).)[3]
*858 Under these regulations, "representation" is defined as including both "practice" and "preparation." ( 8 C.F.R. § 1.2 (2018).)
*1104 "Practice" means "appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with DHS." ( 8 C.F.R. § 1.2 (2018).)
"Preparation," as relevant here, means "the study of the facts of a case and the applicable laws, coupled with the giving of advice and auxiliary activities, including the incidental preparation of papers ...." ( 8 C.F.R. § 1.2 (2018).) However, preparation does not include "service consisting solely of assistance in the completion of blank spaces on printed DHS forms, by one whose remuneration, if any, is nominal and who does not hold himself or herself out as qualified in legal matters or in immigration and naturalization procedure." (Ibid .)
"Case" means "any proceeding arising under any immigration or naturalization law, Executive Order, or Presidential proclamation, or preparation for or incident to such proceeding, including preliminary steps by any private person or corporation preliminary to the filing of the application or petition by which any proceeding under the jurisdiction of the Service or the Board is initiated." ( 8 C.F.R. § 1.2 (2018).)
In broad general outline, only five classes of people are authorized to provide "representation": (1) attorneys in good standing; (2) law students, provided they are under the supervision of an attorney and do not receive compensation; (3) "reputable individuals," who are of good moral character, provided they have a preexisting relationship with the client and do not receive compensation; (4) "accredited representatives," who have been authorized by the EOIR; and (5) "accredited officials" of the client's foreign government. ( 8 C.F.R. § 292.1(a), (e) ; see also 8 C.F.R. § 1.2 [defining attorney].) We will refer to a member of any of these five classes as a "federally authorized person" and to a nonmember as a "federally unauthorized person."
C. Relevant State Law .
The Act provides: "It is unlawful for any person, for compensation, other than persons authorized to practice law or authorized by federal law to represent persons before the Board of Immigration Appeals or the United States Citizenship and Immigration Services, to engage in the business or act in the capacity of an immigration consultant within this state except as provided by this chapter ." ( Bus. & Prof. Code, § 22440, italics added.)
"A person engages in the business or acts in the capacity of an immigration consultant when that person gives nonlegal assistance or advice on an immigration matter." ( Bus. & Prof. Code, § 22441, subd. (a).)
*1105 "Immigration matter," as relevant here, means "any proceeding, filing, or action affecting the immigration or citizenship status of any person which arises under immigration and naturalization law, executive order or presidential proclamation, or *859 action of the United States Citizenship and Immigration Services ...." ( Bus. & Prof. Code, § 22441, subd. (b).)
"Nonlegal assistance or advice" includes:
"(1) Completing a form provided by a federal or state agency but not advising a person as to their answers on those forms.
"(2) Translating a person's answers to questions posed in those forms.
"(3) Securing for a person supporting documents, such as birth certificates, which may be necessary to complete those forms.
"(4) Submitting completed forms on a person's behalf and at their request to the United States Citizenship and Immigration Services.
"(5) Making referrals to persons who could undertake legal representation activities for a person in an immigration matter." ( Bus. & Prof. Code, § 22441, subd. (a).)
We will use "immigration consultant" as shorthand for a person who engages in the business or acts in the capacity of an immigration consultant, according to these definitions.
An immigration consultant must pass a background check ( Bus. & Prof. Code, §§ 22441.1, subd. (a), 22442.4 ), provide clients with a written contract, in English and in the client's native language, containing specified terms ( Bus. & Prof. Code, § 22442, subds. (a) - (f) ), give clients 72 hours to rescind the contract ( Bus. & Prof. Code, § 22442, subd. (f) ), give clients signed receipts and regular account statements ( Bus. & Prof. Code, § 22442.1 ), provide specified disclosures ( Bus. & Prof. Code, §§ 22442.2, 22444, subd. (d) ), maintain a client trust account ( Bus. & Prof. Code, § 22442.5 ), follow specified document provision and retention procedures ( Bus. & Prof. Code, § 22443 ), and file a bond ( Bus. & Prof. Code, § 22443.1, subds. (a) - (d) ). A violation of the Act is subject to both civil ( Bus. & Prof. Code, §§ 22445, subd. (a), 22446.5 ) and criminal penalties. ( Bus. & Prof. Code, § 22445, subds. (b) - (c).)
The Act also makes it unlawful for an immigration consultant (defined, in part, as one who gives nonlegal assistance or advice) to offer legal assistance or advice in an immigration matter. ( Bus. & Prof. Code, § 22441, subd. (d).)
*1106 D. Interaction of Federal and State Law .
1. Conflict preemption .
Salcido asserts that acting as an "immigration consultant" under California law overlaps with "representation" under federal law. She concludes that California law permits what federal law prohibits - namely, it permits federally unauthorized persons (if they comply with California's stringent requirements) to provide "representation".
"Representation" under federal law largely involves the provision of legal services. By contrast, acting as an "immigration consultant" under the Act largely involves the provision of nonlegal services.[4]
*860 Nevertheless, we may assume, without deciding, that there are some areas of overlap. (See Moore, Fraud, the UnauthorizedPractice of Law and Unmet Needs: A Look at State Laws Regulating Immigration Assistants (2004) 19 Geo. Immig. L.J. 1, 18-19 [concluding that "preparation" includes filling out forms by one who charges more than a nominal fee and/or holds him or herself out as an immigration specialist, and therefore state laws permitting federally unauthorized persons to fill out forms are preempted].)
This is essentially a conflict preemption argument. However, there is no conflict, because it is possible to comply with both state and federal law simultaneously.
In Hyland v. Fukuda (9th Cir. 1978) 580 F.2d 977, Hawaiian state law prohibited a convicted felon from possessing a firearm, but it carved out an exception for a state employee acting in the course of his or her duties. ( Id . at p. 980.) Federal law, however, flatly prohibited a convicted felon from possessing a firearm under any circumstances. ( Id . at pp. 979-980.) The appellate court held that this raised no preemption issue, because the state law merely "determines the legality of a certain act under state law, it has no impact on the legality of the same act under federal law. Simply put, Congress has chosen to prohibit an act which Hawaii has chosen not to prohibit ...." ( Id . at p. 981.)
*1107 Similarly, in Qualified Patients Assn. v. City of Anaheim (2010) 187 Cal.App.4th 734, 115 Cal.Rptr.3d 89, state law generally prohibited the possession, sale, and transportation of marijuana, but it created an exemption, under certain circumstances, when the marijuana was for medical purposes. ( Id . at pp. 742-746, 115 Cal.Rptr.3d 89.) Federal law, however, flatly prohibited the possession of marijuana, even if for medical purposes. ( Id . at pp. 756-757, 115 Cal.Rptr.3d 89.)
The appellate court held that there was no conflict preemption: "Conflict preemption exists when 'simultaneous compliance with both state and federal directives is impossible.' [Citation.] ... A claim of positive conflict might gain more traction if the state required , instead of merely exempting from state criminal prosecution, individuals to possess, cultivate, transport, possess for sale, or sell medical marijuana in a manner that violated federal law. But because [state law does not] require such conduct, there is no 'positive conflict' with federal law .... [Citation.] In short, nothing in either state enactment purports to make it impossible to comply simultaneously with both federal and state law." ( Qualified Patients Assn. v. City of Anaheim , supra , 187 Cal.App.4th at pp. 758-759, 115 Cal.Rptr.3d 89.)
Here, California state law does not say that a person who has complied with all of the requirements of the Act can fill out forms (which arguably constitutes "representation," at least in some circumstances). Rather, it says that a person who has not complied with all of the requirements of the Act cannot fill out forms. Thus, the Act does not purport to allow anyone to violate federal law. A person still must be federally authorized in order to provide any kind of "representation."
We accept that a state cannot penalize a nonlawyer who represents a client before a federal agency for the unauthorized practice of law, when the representation is authorized by federal law. ( Sperry v. Florida (1963) 373 U.S. 379, 385, 83 S.Ct. 1322, 10 L.Ed.2d 428.) Here, however, the state seeks to penalize a nonlawyer for acts that, even if they were "representation," were not authorized by federal law.
There is no conflict, and thus there is no conflict preemption.
*861 2. Obstacle preemption .
Defendant notes that the DHS has prescribed certain disciplinary penalties for "the unauthorized representation of immigrants"; however, these do not include criminal penalties. She argues that this reflects a federal choice not to make unauthorized representation a crime, and therefore the Act is preempted. This is essentially an obstacle preemption argument.
*1108 The flaw in this argument is that federal law provides disciplinary penalties only against federally authorized persons, and not against federally unauthorized persons. It leaves any penalties against the latter up to the states.
"An adjudicating official or the Board of Immigration Appeals ... may impose disciplinary sanctions against any practitioner ...." ( 8 C.F.R. § 292.3(a)(1).) A "practitioner," however, is defined as either an attorney or a federally authorized person. ( 8 C.F.R. §§ 1.2, 292.3(a)(2) ; see also 8 C.F.R. § 292.3(a)(1) [providing for sanctions against "a practitioner who is authorized to practice before DHS"].) Thus, the listed grounds for discipline, while not exclusive, do not include representation by a federally unauthorized person. ( 8 C.F.R. § 292.3(b), incorporating 8 C.F.R. § 1003.102.) The omission is highlighted by the fact that they do include assisting representation by a federally unauthorized person. ( 8 C.F.R. § 292.3(b), incorporating 8 C.F.R. § 1003.102(m).)
In 1992, a legal opinion of the Office of the General Counsel of the former Immigration and Naturalization Service (the predecessor of the USCIS) concluded that a state can penalize a federally unauthorized person for engaging in the unauthorized practice of law. (Office of the General Counsel Opn. No. 92-29, Legal Opinion: Role of Visa Consultants in the Practice of Immigration Law (June 9, 1992) 1992 WL 1369368 at p. *2.) It added: "Whether or not representation by ... a [federally unauthorized] person in violation of federal immigration regulations also violates state laws can only be determined by applying the statutes and regulations that govern the practice of law in each particular state." (Id . at p. *4.)
Consistent with our analysis, the EOIR's Immigration Court Practice Manual states that its "disciplinary procedures ... do not apply to non-practitioners engaged in the unauthorized practice of law. Anyone harmed by an individual practicing law without authorization should contact the appropriate law enforcement or consumer protection agency." (EOIR, Immigration Court Practice Manual (rev. Aug. 2, 2018) § 10.3(e).[5] ) The manual also states: "Immigration specialists - who include visa consultants and 'notarios' - are not authorized to practice law or appear before the Immigration Court. These individuals may be violating the law by practicing law without a license." (Id ., § 2.7.) This is necessarily a reference to state law.[6]
*1109 Defendant also points to the EOIR's Fraud and Abuse Prevention Program. (See < https://www.justice.gov/eoir/fraud-and-abuse-prevention-program>, as of May 1, 2019.) "The Fraud Program investigates complaints of fraud, scams, and unauthorized practitioners ...." (Ibid .) However, it also "supports fraud and unauthorized practitioner investigations, prosecutions, and disciplinary proceedings *862 initiated by local [and] state ... law enforcement and disciplinary authorities." (Ibid .) Its website includes a link entitled, "How Do I Report a Scam or an Unauthorized Practitioner to State or Local Officials?" (ibid .); when clicked, on it leads to a page indicating that "the unauthorized practice of immigration law" in California is governed by the "Immigration Consultants Act" and should be reported to the state Attorney General or the State Bar. (Report Immigration Scams, < https://www.uscis.gov/avoid-scams/report-scams>, as of May 1, 2019.)
In sum, then, there is a clear federal intent to allow the states to penalize federally unauthorized persons for providing "representation" in immigration matters. And, of course, to the extent that what defendant was doing was not "representation," as defined by federal law, there was no federal concern whatsoever about state regulation of her conduct.
3. Field preemption .
Although defendant mentions field preemption, we do not understand her to be relying on it. All of her arguments turn on the state law being in conflict with, or an obstacle to the accomplishment of the intention of, federal law. If only out of an excess of caution, then, we note that, for the reasons already stated, field preemption also does not apply. The federal regulation is not so comprehensive as to leave no room for state regulation; while it specifies who may (and may not) provide representation before the USCIS, it offers only an incomplete enforcement mechanism. Moreover, there are ample indicia of a federal intent to allow for state regulation.
III**
*1110 IV
ELECTRONIC SEARCH CONDITION OF PROBATION
Probation condition 39 requires defendant to "[s]ubmit to immediate search and seizure of computers, memory storage devices, electronic mail, internet accounts, and data and information contained therein; with or without reasonable cause by the probation officer or law enforcement." Defendant contends that this condition is unreasonable and unconstitutional.[7]
A. Forfeiture .
Preliminarily, the People contend that defendant forfeited this contention by failing to object at sentencing.
"As a rule, failure to object to a probation condition in the trial court on standard state law or reasonableness grounds forfeits the claim for appeal. [Citation.]" ( People v. Moran (2016) 1 Cal.5th 398, 405, fn. 7, 205 Cal.Rptr.3d 491, 376 P.3d 617.) Defendant argues, however, that if so, her trial counsel's failure to object constituted ineffective assistance of counsel. We exercise our discretion to decide the issue on the merits to obviate the need to address her alternative ineffective assistance of counsel claim. ( In re Victor L. (2010) 182 Cal.App.4th 902, 928, 106 Cal.Rptr.3d 584.)
B. Reasonableness .[8]
"Consistent with established law, we first address whether the probation condition was permissible under state law before turning to resolve any potential federal *863 constitutional issue posed in the case." ( People v. Moran , supra , 1 Cal.5th at pp. 401-402, 205 Cal.Rptr.3d 491, 376 P.3d 617, fn. omitted.)
A probation condition is unreasonable if it " ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality ...." ' [Citation.]" ( People v. Anderson (2010) 50 Cal.4th 19, 32, 112 Cal.Rptr.3d 685, 235 P.3d 11.)
"On appeal, '[w]e review conditions of probation for abuse of discretion.' [Citation.] That is, a reviewing court will disturb the trial court's decision to *1111 impose a particular condition of probation only if, under all the circumstances, that choice is arbitrary and capricious and is wholly unreasonable. [Citation.]" ( People v. Moran , supra , 1 Cal.5th at p. 403, 205 Cal.Rptr.3d 491, 376 P.3d 617.)
There is no evidence that defendant's crimes involved computers or the internet.[9] And using computers or the internet is not, in itself, criminal. Accordingly, the key question is whether this condition relates to future criminality.
" 'A condition of probation that enables a probation officer to supervise his or her charges effectively is, therefore, 'reasonably related to future criminality.' [Citations.]" ( People v. Olguin (2008) 45 Cal.4th 375, 380-381, 87 Cal.Rptr.3d 199, 198 P.3d 1.)
" '[P]robation conditions authorizing searches 'aid in deterring further offenses ... and in monitoring compliance with the terms of probation. [Citations.] By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers.' [Citation.]" ( People v. Olguin , supra , 45 Cal.4th at p. 380, 87 Cal.Rptr.3d 199, 198 P.3d 1.) In particular, "a warrantless search condition is intended to ensure that the subject thereof is obeying the fundamental condition of all grants of probation, that is, the usual requirement (as here) that a probationer 'obey all laws.' " ( People v. Balestra (1999) 76 Cal.App.4th 57, 67, 90 Cal.Rptr.2d 77.)
In this respect, we see no relevant difference between an electronic search condition and any other search condition. We recognize that a computer (or similar memory storage device) is qualitatively different from the home or the person, because it makes some information available that was unavailable before - e.g., a list of person's Google searches. (See Riley v. California (2014) 573 U.S. 373, ---- [134 S.Ct. 2473, 2491, 189 L.Ed.2d 430].) At the same time, however, it makes new crimes possible that were impossible before, such as ransomware installation, and it facilitates existing crimes, such as identity theft. Therefore, an electronic search condition is reasonably related to supervising a probationer's rehabilitation and compliance with the law. ( In re P.O. (2016) 246 Cal.App.4th 288, 295-296, 200 Cal.Rptr.3d 841.)
Defendant relies on In re Erica R . (2015) 240 Cal.App.4th 907, 192 Cal.Rptr.3d 919, which held an electronic search condition invalid as applied to a juvenile who had committed possession of Ecstasy. ( Id . at pp. 911-915, 192 Cal.Rptr.3d 919.)
*1112 The court, however, distinguished a case upholding a general search condition, on the ground that it "involved an adult probationer, not a juvenile probationer *864 .... Courts have recognized that a 'minor cannot be made subject to an automatic search condition; instead, such condition must be tailored to fit the circumstances of the case and the minor.' [Citations.]" ( Id . at p. 914, 192 Cal.Rptr.3d 919.) Thus, it implied that an electronic search condition, as applied to an adult, would have to be upheld.
In a footnote, defendant also challenges a separate probation condition that requires her to "[d]isclose your true identity, including residence address and telephone number, in any advertisement, notice, or offer to sale and/or purchase on the internet." We deem this contention forfeited, because it is not within the scope of any of the headings in her brief, and because it is not supported by any analysis or citation of authority. ( Cal. Rules of Court, rule 8.204(a)(1)(B) ; People v. Nguyen (2013) 212 Cal.App.4th 1311, 1325, 151 Cal.Rptr.3d 771.) However, we do note that, assuming this condition was valid, the challenged electronic search condition was necessary to monitor defendant's compliance with it.
We therefore conclude that the challenged search condition was reasonable as a matter of state law.
C. Constitutionality .
"If a probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens." ' [Citation.]" ( People v. O'Neil (2008) 165 Cal.App.4th 1351, 1355, 81 Cal.Rptr.3d 878.)
Nevertheless, " ' "[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." [Citation.] "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights - bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." [Citation.]' [Citations.]" ( People v. Guzman (2018) 23 Cal.App.5th 53, 64, 232 Cal.Rptr.3d 503.)
"We review 'constitutional challenges to probation conditions de novo.' [Citation.]" ( People v. Guzman , supra , 23 Cal.App.5th at p. 64, 232 Cal.Rptr.3d 503.)
*1113 1. Self-incrimination .
Defendant contends that the challenged condition implicitly requires her to disclose her passwords, and hence it requires her to incriminate herself.
"[I]t would raise serious constitutional questions to require defendants to waive their privilege against self-incrimination as a condition of probation." ( People v. Garcia (2017) 2 Cal.5th 792, 803, 216 Cal.Rptr.3d 75, 391 P.3d 1153.) However, "a [s]tate may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination." ( Minnesota v. Murphy (1984) 465 U.S. 420, 435, fn. 7, 104 S.Ct. 1136, 79 L.Ed.2d 409.)
The California Supreme Court's decision in People v. Garcia , supra , 2 Cal.5th 792, 216 Cal.Rptr.3d 75, 391 P.3d 1153 is all but on point. There, the defendant was convicted of sex offenses and placed on probation. ( Id . at p. 799, 216 Cal.Rptr.3d 75, 391 P.3d 1153.) As required by Penal Code section 1203.067, subdivision (b)(3), the trial court made it a condition of probation that he had to waive the privilege against self-incrimination and submit to polygraph examinations. ( Ibid . )
*865 The Supreme Court held that, in order to avoid any constitutional question, the probation condition had to be construed to mean that "a probationer is required to answer the questions posed by the containment team, on pain of probation revocation should the probationer refuse. In turn, the probationer's compelled responses may not be used against the probationer in a subsequent criminal prosecution. [Citation.]" ( People v. Garcia , supra , 2 Cal.5th at p. 807, 216 Cal.Rptr.3d 75, 391 P.3d 1153.) It then upheld the constitutionality of the condition, as so construed: "As this court has previously explained, the Fifth Amendment does not establish a privilege against the compelled disclosure of information; rather, it 'precludes the use of such evidence in a criminal prosecution against the person from whom it was compelled.' [Citation.]" ( Ibid . )
Defendant relies on United States v. Kirschner (E.D. Mich. 2010) 823 F.Supp.2d 665. There, however, the prosecution subpoenaed the defendant to testify before a grand jury; the subpoena required him to disclose computer passwords. ( Id . at p. 666.) Thus, there was no question that the government was seeking to compel the disclosure of the passwords for use as evidence in a criminal prosecution. Kirschner does not apply when (1) the government is seeking to compel the disclosure of passwords for purposes of probation supervision, and (2) the defendant can still prevent their use in evidence.
Accordingly, if and to the extent that the challenged condition requires defendant to disclose passwords, it does not preclude her from invoking her *1114 right against self-incrimination, after such a disclosure, to preclude the use of the disclosure against her in a criminal prosecution. The condition, as thus construed, does not violate that constitutional right.
2. Other constitutional rights .
Defendant also contends that the challenged condition violates her First Amendment, Fourth Amendment, and privacy rights.
The Supreme Court has granted review in a number of recently published cases involving this issue. (E.g., People v. Maldonado (2018) 22 Cal.App.5th 138, 231 Cal.Rptr.3d 285 [electronic search condition not overbroad], review granted June 20, 2018, S248800; People v. Valdivia (2017) 16 Cal.App.5th 1130, 225 Cal.Rptr.3d 181 [electronic search condition overbroad], review granted Feb. 14, 2018, S245893.) The grants of review, however, were limited to the issue of reasonableness under state law, not constitutional overbreadth. Thus, the Supreme Court is not likely to decide the present issue. Moreover, while these cases are citable ( Cal. Rules of Court, rule 8.1115(e)(1) ), they are in conflict; they do not point in any clear direction. Hence, we analyze the issue afresh.
As discussed in part IV.B, ante , we see no relevant difference between an electronic search condition and any other search condition. Once again, defendant relies on Riley v. California , supra , 134 S.Ct. 2473, which held that a search of an arrestee's cell phone requires a warrant. In the course of doing so, the court observed that "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person" ( id . at p. 2489 ), so that a search of cell phone data is more intrusive and more violative of privacy than a conventional search incident to arrest. ( Id . at pp. 2489-2491.) The court cautioned, however: "Our holding, of course, is not that the information on a cell phone is immune from search ...." ( Id . at p. 2493.) "[E]ven though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a *866 warrantless search of a particular phone." ( Id . at p. 2494.)
Defendant, as a probationer, is in a materially different position that the arrestee in Riley . She has been tried and found guilty of crimes. As a result, she has a lesser expectation of privacy. "Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled." ' [Citation.] Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms *1115 enjoyed by law-abiding citizens." ( United States v. Knights (2001) 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497.) As already discussed, the unique qualities of cell phones (and similar electronic devices) may make a search more intrusive; however, they also open up new avenues to crime and necessitate new methods of supervision.
Significantly, defendant does not suggest how the challenged condition could be made narrower and yet still be effective.[10] She argues that "the condition[ ] intrude[s] broadly and indiscriminately on the most intimate details of [her] private life - her movement, associations, political and religious beliefs, and her personal, romantic, and sexual expression and thought. The condition[ ] chill[s] her ability to have frank and open conversations with partners, friends, family members, and acquaintances." However, due to her counsel's failure to object below, as well as the resulting failure to develop an evidentiary record, we can only consider the impact of the challenged electronic search condition on its face; we cannot consider any particularized impact it may have on defendant. In any event, defendant's concerns are overblown, given that a probation search "must be reasonably related to the purposes of probation" ( People v. Robles (2000) 23 Cal.4th 789, 797, 97 Cal.Rptr.2d 914, 3 P.3d 311 ) and not harassing, arbitrary, or capricious. ( People v. Bravo (1987) 43 Cal.3d 600, 610, 238 Cal.Rptr. 282, 738 P.2d 336.)
In re P.O. , supra , 246 Cal.App.4th at pp. 297-298, 200 Cal.Rptr.3d 841 and In re Malik J . (2015) 240 Cal.App.4th 896, 901-904, 193 Cal.Rptr.3d 370 held that, at least in most cases, an electronic search condition is overbroad. These cases are distinguishable, however, because they involved juveniles. Unlike an adult, "a minor cannot be made subject to an automatic search condition; instead, such condition must be tailored to fit the circumstances of the case and the minor. [Citations.]" ( People v. Rios (2011) 193 Cal.App.4th 584, 597, 122 Cal.Rptr.3d 96.)
In addition, People v. Appleton (2016) 245 Cal.App.4th 717, 199 Cal.Rptr.3d 637 held an electronic search condition overbroad in the case of an adult. ( Id . at pp. 724-727, 199 Cal.Rptr.3d 637.) However, we respectfully disagree with the reasoning in Appleton .
First, the court rejected the analogy to a general search condition, reasoning that the cases upholding a general search condition had not been decided in the context of the original imposition of the condition at sentencing, but *1116 rather in the context of a challenge to the resulting search. ( People v. Appleton , supra , 245 Cal.App.4th at pp. 724-725, 199 Cal.Rptr.3d 637.) While that may be true of the cases that Appleton cited, this court has upheld a general search condition in the context of the original *867 imposition of the condition at sentencing. ( People v. Adams (1990) 224 Cal.App.3d 705, 711-712, 274 Cal.Rptr. 94.) We noted that "a warrantless search condition is intended [to] and does enable a probation officer ' "to ascertain whether [the defendant] is complying with the terms of probation; to determine not only whether [the defendant] disobeys the law, but also whether he obeys the law. Information obtained ... would afford a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation." ' [Citation.]" ( Id . at p. 712, 274 Cal.Rptr. 94.)[11]
Second, Appleton reasoned, citing Riley , that an electronic search condition is more "invasive" than a general search condition. ( People v. Appleton , supra , 245 Cal.App.4th at p. 725, 199 Cal.Rptr.3d 637.) For the reasons already stated, we do not find Riley particularly relevant to the validity of a probation condition.
We look instead to People v. Ebertowski (2014) 228 Cal.App.4th 1170, 176 Cal.Rptr.3d 413, which, while not perfectly on point, is persuasive. It held that probation conditions requiring the defendant to provide the passwords to his electronic devices and social media accounts were not overbroad so as to unduly impinge on his constitutional rights to privacy, speech, and association ( id . at pp. 1175-1176, 176 Cal.Rptr.3d ): " 'Defendant's constitutional privacy rights are not improperly abridged by the password conditions any more than they are by the search condition. Even where there is '(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct constituting a serious invasion of the privacy interest,' the constitutional right to privacy is not violated if 'the invasion of the privacy interest is justified because it substantially furthers one or more legitimate competing or countervailing privacy or non-privacy interests.' [Citation.] Here, the competing interest is the state's interest in preventing defendant from continuing his violent gang associations and activities. ... The minimal invasion of his privacy that is involved in the probation officer monitoring defendant's use of his devices and his social media accounts while defendant is on probation is outweighed by the state's interest in protecting the public from a dangerous criminal who has been granted the privilege of probation." ( Id . at p. 1176, 176 Cal.Rptr.3d 413, fn. omitted.)
*1117 Defendant may not be a violent gang member, but she is a convicted thief who victimized eight people (or more, if you include the counts that were dismissed as time-barred) by taking money that they could ill afford to lose. The state has the same interest in monitoring her probation as it had in monitoring Ebertkowski's - namely, promoting the defendant's rehabilitation while protecting the public. The challenged electronic search condition serves this purpose. Defendant has not shown that a narrower search condition would do the same.
V
DISPOSITION
The judgment is affirmed.
I concur:
McKINSTER J.

A U visa is available to victims of certain crimes.

We note, however, that the presumption is not crucial to our analysis; even without it, we would come to the same conclusions, for the same reasons.

A virtually identical set of regulations specifies who can provide representation before the Executive Office for Immigration Review (EOIR). (8 C.F.R. §§ 1001.1(c), (e), (m), 1292.1 ; see generally Careen Shannon, Regulating Immigration Legal Service Providers: Inadequate Representation and Notario Fraud (2009) 78 Fordham L. Rev. 577, 602, fn. 119.)
Generally speaking, representation before the USCIS relates to applications for admission or continued presence, such as visas, whereas representation before the EOIR relates to removal proceedings. (Lee, Congressional Research Service, Legal Ethics in Immigration Matters (2009) at p. 1, fns. omitted, available at < https://www.americanbar.org/content/dam/aba/administrative/immigration/fightnotariofraud/crs_lega_ethics_in_immigration_matters.authcheckdam.pdf>, as of May 1, 2019.) As there is no evidence that defendant was involved in removal proceedings, we focus on representation before the USCIS.

At one point, we called for further briefing on whether there was sufficient evidence that defendant provided any nonlegal assistance or advice. The testimony at trial seemed to portray her as providing legal advice and assistance - for example, about the particular visa that a client might be qualified for and about how to obtain that visa. If that was all she did, it would seem that she was simply not guilty.
As the parties pointed out, however, defendant stipulated that she was an immigration consultant. This necessarily meant that she provided nonlegal assistance and advice (even if she also provided legal assistance and advice). Indeed, it is possible that the People refrained from presenting additional evidence that she provided nonlegal assistance and advice precisely because they were relying on this stipulation.

Available at < https://www.justice.gov/eoir/page/file/1084851/download>, as of May 1, 2019.

The EOIR's Board of Immigration Appeals Practice Manual (rev. Oct. 16, 2018), available at < https://www.justice.gov/eoir/page/file/1103051/download>, as of May 1, 2019, contains virtually identical provisions. (Id ., §§ 2.7, 11.3(a))

See footnote *, ante .

In her opening brief, defendant similarly challenged probation conditions 37 and 38, which also related to electronic data. As she now concedes, however, the trial court did not actually impose these conditions.

The question of whether an electronic search condition is unreasonable under state law is currently pending before the Supreme Court in In re Ricardo P . (2015) 241 Cal.App.4th 676, 193 Cal.Rptr.3d 883, review granted Feb. 17, 2016, S230923.

The police seized computers from defendant but never actually searched them. According to the probation report, defendant obtained clients through television, radio, magazine, and newspaper ads.

At oral argument, defendant's counsel suggested that the search condition could be limited to defendant's business-related files. But how is a probation officer to know which files are business-related without searching them? And for obvious reasons, it cannot be left up to defendant to designate which of her files are business-related.

Our Supreme Court has similarly endorsed the effectiveness of a general search condition: "[P]robation conditions authorizing searches 'aid in deterring further offenses ... and in monitoring compliance with the terms of probation. [Citations.] By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers.' [Citation.]" (People v. Olguin , supra , 45 Cal.4th at p. 380, 87 Cal.Rptr.3d 199, 198 P.3d 1.)