Filed 3/26/21; Certified for Publication 4/1/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ERICK V. PARADA et al., | B296566 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC681293) |
| v. | |
| EAST COAST TRANSPORT INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  William H. Fahey, Judge.  Reversed and remanded with directions.

Gomez Law Group and Alvin M. Gomez for Plaintiffs and Appellants.

Vanderford & Ruiz, Todd A. Picker and Zeeshan Kabani for Defendant and Respondent.

_____

Erick V. Parada, Felipe Alfonso Sergio Alonso Reyes, Jose Antonio Alfaro, and Rony Manual Arana (Appellants) appeal from a judgment against them following a court trial. Appellants are truck owner/operators who performed work as putative independent contractors for respondent East Coast Transport, Inc. (East Coast). East Coast is a drayage company that arranges for the pick-up and delivery of goods from Los Angeles area ports to nearby locations. Appellants sued East Coast, claiming that they were actually employees rather than independent contractors and were therefore wrongfully deprived of statutory protections and benefits given to employees, such as provisions for rest breaks and meal periods, reimbursement of expenses, and itemized wage statements.

Following the first portion of a bifurcated trial on Appellants' claim under the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200), the trial court ruled that Appellants were independent contractors rather than employees. The court concluded that this finding disposed of each of Appellants' claims and entered judgment accordingly.

In finding that Appellants were independent contractors, the trial court ruled that our Supreme Court's decision in *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903 (*Dynamex*) did not apply retroactively. *Dynamex* held that a three-factor test (the so-called "ABC" test) should be used to determine if a worker qualifies as an independent contractor for purposes of California's wage orders (which establish many entitlements for employees). (*Id.* at pp. 916–917.) One of the requirements of that test is that an independent contractor must perform work that is outside the usual course of the hiring entity's business. Instead of the *Dynamex* test, the trial court

2

applied the multi-factor definition of an independent contractor described in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*).

Since the trial court's ruling, our Supreme Court has decided that *Dynamex* should be applied retroactively. In *Vazquez v. Jan-Pro Franchising International* (2021) 10 Cal.5th 944 (*Vazquez*), the court reached that conclusion primarily because *Dynamex* "addressed an issue of first impression" and did not change a settled rule on which the parties had relied. (*Vazquez*, at p. 948.)

Our Supreme Court's decision in *Vazquez* controls here. The judgment therefore may not be affirmed on the legal ground that the trial court adopted.

East Coast also argues as an alternative ground for affirmance that federal law preempts the ABC test as applied to its business. In *People v. Superior Court (Cal Cartage Transportation Express, LLC)* (2020) 57 Cal.App.5th 619 (*Cal Cartage*), Division Four of this appellate district recently rejected an identical argument. We agree with the decision in that case and conclude that federal law does not preclude application of the ABC test here.

Because the judgment was based on an incorrect legal standard, we reverse it and remand the case for further proceedings on Appellants' complaint.

## BACKGROUND

### 1. The Parties

As a drayage company, East Coast handles the transportation of shipping containers to and from ports in the Los Angeles area. East Coast hires commercial truck drivers such as Appellants for this task. Before working for East Coast,

3

Appellants had all worked as drivers for other trucking companies.

Each Appellant signed an Independent Contractor Agreement provided by East Coast. Under that agreement, Appellants acknowledged that they were independent " 'owner-operators' " and not employees. They agreed to provide their own trucks and to supply their own labor to load and unload the trucks. They had the option to accept or reject loads offered by East Coast and were permitted to accept work from other trucking companies.

Appellants in fact owned their own trucks, which they purchased from a company owned by Jose Serrano, a co-owner of East Coast. Appellants paid for the trucks through deductions from their weekly paychecks.

As owner-operators, Appellants made more money than employees. East Coast also compensated them for their driving distance, fuel, and expenses.

## 2.    Proceedings in the Trial Court

Appellants sued East Coast in October 2017. The crux of their complaint was that East Coast willfully misclassified Appellants as independent contractors rather than employees to avoid the legal requirements associated with employee status.

The complaint alleged nine causes of action, including claims under the Labor Code for alleged failure to pay wages when due; failure to pay minimum wages; failure to provide mandated rest periods and meal breaks; and failure to furnish timely and accurate wage statements.

A number of Appellants' Labor Code claims were based on Industrial Welfare Commission Wage Order No. 9-2001 (Wage Order No. 9), which establishes requirements for minimum

wages, overtime rates, and meal and rest periods for employees in the transportation industry. (See Cal. Code Regs., tit. 8, § 11090.) The complaint also included a cause of action under the UCL alleging that East Coast unfairly evaded classification of its drivers as employees and engaged in unlawful conduct by committing the alleged Labor Code violations.

In pretrial proceedings, the trial court ruled that *Dynamex* did not apply to Appellants' claims. The court reasoned that: (1) *Dynamex* "was decided after all of the events at issue in this case took place and after the complaint was filed"; (2) the opinion in *Dynamex* applied existing law to the parties in that case and was "notably silent" as to whether the ABC test should be applied retroactively; and (3) applying a new legal standard in the form of the ABC test to a "decades old and industry-wide business model" would violate due process.

The trial court ordered a bifurcated trial, with Appellants' UCL claim to be tried first to the court. At the conclusion of the first phase of trial, the trial court issued a statement of decision finding in favor of East Coast.

Applying the *Borello* standard, the trial court found that East Coast had met its burden to show that Appellants were independent contractors rather than employees. The court found that East Coast exercised only limited control over Appellants' work and did not supervise them; Appellants were skilled drivers who owned their own vehicles and were paid by the job; the independent contractor agreements between East Coast and Appellants were short-term and easily canceled; and Appellants and East Coast "firmly believed that their relationship was *not* that of an 'employer-employee.' "

The trial court therefore found in favor of East Coast on Appellants' UCL claim. Based upon its finding that Appellants were independent contractors rather than employees, the court also concluded that Appellants' remaining claims were "untenable as a matter of law" and entered judgment in favor of East Coast.

## DISCUSSION

### 1. Our Supreme Court's Decision in *Dynamex* Applies Retroactively

In *Dynamex,* our Supreme Court considered the standard that should be applied when deciding whether a worker is an employee or an independent contractor for purposes of California wage orders. (*Dynamex, supra,* 4 Cal.5th at pp. 913–914.) Such wage orders "impose obligations relating to the minimum wages, maximum hours, and a limited number of very basic working conditions (such as minimally required meal and rest breaks) of California employees." (*Ibid.*)

The plaintiffs in *Dynamex* sought to certify a class of drivers for a nationwide package and document delivery company (Dynamex). (See *Dynamex, supra,* 4 Cal.5th at pp. 914–915.) The drivers alleged that Dynamex had misclassified its delivery drivers as independent contractors rather than employees. (*Ibid.*) Like Appellants here, the drivers in *Dynamex* sought relief under Business and Professions Code section 17200 for Dynamex's alleged violations of the relevant wage order and of various sections of the Labor Code. (*Ibid.*)

As in this case, in *Dynamex* the applicable wage order was Wage Order No. 9. (*Dynamex, supra,* 4 Cal.5th at pp. 914, 925.) That wage order defines " 'employ' " as " 'to engage, suffer or permit to work.' " (*Id.* at p. 926.) After considering the historical

6

origins of the "suffer or permit to work" language and the remedial purpose of wage orders, the court concluded that "the suffer or permit to work standard must be interpreted and applied broadly to include within the covered 'employee' category *all* individual workers who can reasonably be viewed as '*working in* [*the hiring entity's*] business.'" (*Dynamex,* 4 Cal.5th at p. 953, quoting *Martinez v. Combs* (2010) 49 Cal.4th 35, 69.) The court also considered the disadvantages of a multifactor test, such as the one applied in the context of workers' compensation under *Borello*, and concluded that the comparatively simple ABC test was preferable for California wage orders. (*Dynamex,* at pp. 929, 954–957.)

The ABC test contains three requirements. To show that a worker is an independent contractor, an employer has the burden to prove "(A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." (*Dynamex, supra,* 4 Cal.5th at p. 957.)

In *Vazquez,* the court subsequently held that its decision in *Dynamex* applies retroactively to all cases that were not yet final at the time of that decision.[1] (*Vazquez, supra,* 10 Cal.5th at

---

[1] Our Supreme Court considered the issue in the context of answering a certified question from the Ninth Circuit Court of Appeals concerning the retroactivity of *Dynamex*. (See *Vazquez v. Jan-Pro Franchising Int'l, Inc.* (2021) 986 F.3d 1106, 1116–1117 (*Vazquez II*).)

p. 948.)  *Vazquez* relied on the general rule that " 'judicial decisions are to be applied retroactively.' " (*Vazquez, supra,* 10 Cal.5th at p. 951, quoting *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24.)  The court concluded that no exceptions to that rule applied.  The court explained that *Dynamex* decided an issue of first impression, and that "the ABC test articulated in *Dynamex* was within the scope of what employers reasonably could have foreseen." (*Vazquez,* at pp. 953, 955–956.)

Importantly, the court in *Vazquez* considered, and rejected, the same fairness arguments that East Coast makes here.  East Coast argues that it reasonably relied on the *Borello* standard and that it could not have anticipated that the ABC standard would govern the status of its drivers.  The court in *Vazquez* reasoned that such arguments carried "little weight when, as here, the underlying decision changes no settled rule." (*Vazquez, supra,* 10 Cal.5th at p. 949.)  The court also explained that "public policy and fairness concerns, such as protecting workers and benefitting businesses that comply with the wage order obligations, favor retroactive application of *Dynamex*." (*Ibid.*)

East Coast also argues that applying the ABC standard here would violate its due process rights.  The court's decision in *Vazquez* forecloses that argument.  The court expressly rejected the proposition that "reliance or fairness considerations" precluded retroactive application of *Dynamex* under due process principles. (*Vazquez, supra,* 10 Cal.5th at p. 957, fn. 4.)

Thus, under *Vazquez*, it is clear that the *Dynamex* standard applies to this case.  The trial court's decision that *Dynamex*

8

should not be applied retroactively to this case must therefore be reversed.[2]

## 2. Federal Law Does Not Preempt Application of the ABC Test to Motor Carriers

In a brief alternative argument in support of affirmance, East Coast claims that the Federal Aviation Administration Authorization Act (FAAAA; Pub.L. No. 103-305 (Aug. 23, 1994)

---

[2] The decision in *Dynamex* applied only to the definition of "employ" for purposes of wage orders and did not reach the question of whether the ABC test should apply to claims under the Labor Code. (See *Dynamex, supra,* 4 Cal.5th at pp. 916, fn. 5, 942.) In 2020, the Legislature subsequently adopted the *Dynamex* test for purposes of the entire Labor Code. (Lab. Code, § 2775; see *Cal Cartage*, *supra*, 57 Cal.App.5th at pp. 626–627.) After the decision in *Dynamex,* but before the legislative change, several Courts of Appeal decided that the *Borello* standard rather than the ABC test should apply to claims under the Labor Code that are not based upon wage order violations. (See *Gonzales v. San Gabriel Transit, Inc.* (2019) 40 Cal.App.5th 1131, 1157, review granted Jan. 15, 2020, S259027 ["the ABC test applies to Labor Code claims which are either rooted in one or more wage orders, or predicated on conduct alleged to have violated a wage order," but the *Borello* test applies to other Labor Code claims]; *Garcia v. Border Transportation Group, LLC* (2018) 28 Cal.App.5th 558, 571 [*Borello* provides the proper standard for non-wage-order claims].) East Coast does not argue that the *Borello* test applies to any of Appellants' claims under these decisions. We therefore do not consider whether any of Appellants' claims fall outside the scope of the *Dynamex* decision under prior law.

108 Stat. 1569) preempts any state rule that applies the ABC test to motor carriers.[3]  We disagree.

Under the FAAAA, a "State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier."  (49 U.S.C. § 14501(c)(1); see *People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 775 (*Pac Anchor*).)  East Coast argues that, at least as interpreted by Appellants, the ABC test would interfere with the FAAAA's objectives by compelling a motor carrier such as East Coast to use employees rather than independent contractors to perform the services that it provides.

The court in *Cal Cartage* rejected an identical argument.  In that case, Division Four of this appellate district concluded that the ABC test is a law of general application that "does not mandate the use of employees for any business or hiring entity."  (*Cal Cartage, supra,* 57 Cal.App.5th at p. 631.)  Accordingly, the court held that the FAAAA did not preclude applying the ABC test to a UCL claim by the Los Angeles City Attorney alleging

---

[3] Appellants object to this argument on the ground that East Coast did not raise it below.  We have discretion to consider an issue of law raised for the first time on appeal if the issue does not depend upon disputed facts.  (*Frink v. Prod* (1982) 31 Cal.3d 166, 170; *Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1709.)  East Coast's preemption argument raises a legal issue that may be resolved without regard to the specific facts of this case.  (See *Cal Cartage, supra*, 57 Cal.App.5th at p. 629.)  Moreover, the trial court would likely need to consider the argument on remand if we do not address it now.  So we exercise our discretion to consider the issue.

that various trucking companies had misclassified their owner-operators as independent contractors. (*Id.* at pp. 624–625, 634.)

The court in *Cal Cartage* relied upon our Supreme Court's decision in *Pac Anchor*. (See *Cal Cartage, supra,* 57 Cal.App.5th at pp. 630–631.) In *Pac Anchor,* the court similarly concluded that the FAAAA did not preempt a UCL claim brought by the State of California alleging that trucking companies had misclassified drivers as independent contractors.

The court in *Pac Anchor* first rejected the argument that the FAAAA preempts all UCL claims against motor carriers because such claims "regulate the effect that unfair business practices have on the quality and price of goods and services." (*Pac Anchor, supra,* 59 Cal.4th at pp. 782–784.) The court explained that the UCL is a broad law of general application that does not mention motor carriers specifically. (*Id.* at p. 783.) The court concluded that a "UCL action that is based on an alleged general violation of labor and employment laws does not implicate" the concerns about the "regulation of motor carriers with respect to the transportation of property" that underlie the FAAAA. (*Ibid.*)

The court in *Pac Anchor* also held that the FAAAA did not preempt the UCL as applied in that action. In that case, the state had alleged a single cause of action under the UCL "premised on violations of the Unemployment Insurance Code, the Labor Code, and IWC Wage Order No. 9." (*Pac Anchor, supra,* 59 Cal.4th at p. 784.) The court concluded that the provisions of law underlying the state's UCL claim did not relate to motor carrier prices, routes, or services. Rather, they were laws of general application applicable to all employers that fell outside the scope of provisions that the FAAAA preempts under

11

controlling United States Supreme Court precedent. (*Id.* at pp. 784–785, citing *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 388.)

Of particular importance here, the court in *Pac Anchor* also rejected the argument that the UCL claim in that case would significantly affect motor carrier prices, routes, and services because its application would prevent motor carriers from using independent contractors. (*Pac Anchor, supra,* 59 Cal.4th at p. 785.) The court agreed with the defendants that the state "may not prevent them from using independent contractors." (*Ibid.*) However, the court decided that the state's UCL claim would not have that effect. The court explained that "[t]he People merely contend that if defendants pay individuals to drive their trucks, they must classify these drivers appropriately and comply with generally applicable labor and employment laws." (*Ibid.*) The court concluded that "Defendants are free to use independent contractors as long as they are properly classified." (*Id.* at p. 787.)

Our Supreme Court's decision in *Pac Anchor* preceded its opinion in *Dynamex.* However, as explained above, *Dynamex* did not change the law, but simply interpreted the language "suffer or permit to work" in Wage Order No. 9 in a manner that employers "reasonably could have foreseen." (See *Vazquez, supra,* 10 Cal.5th at pp. 955–956.) Thus, there is no reason to believe that *Dynamex* had any effect on the court's conclusion in *Pac Anchor* that the state may permissibly apply its general employee classification rules to motor carriers.

We therefore agree with the conclusion of Division Four in *Cal Cartage* that *Pac Anchor* is "dispositive" on the question whether the FAAAA preempts a claim against a motor carrier

12

seeking to enforce the ABC test. (See *Cal Cartage, supra,* 57 Cal.App.5th at p. 631.) Like the labor laws at issue in *Pac Anchor,* including Wage Order No. 9, "the ABC test is a law of general application" that "does not mandate the use of employees for any business or hiring entity." (*Cal Cartage*, at p. 631.)[4]

3.      **The Trial Court Should Consider in the First**
        **Instance Whether Appellants Were**
        **Misclassified as Independent Contractors**
        **Under the ABC Test.**

Appellants argue that, under the facts presented at trial, East Coast could not meet its burden to establish that Appellants were independent contractors under the ABC test because East Coast is "in the trucking business and Appellants performed truck driving services for it." Thus, East Coast could not show that Appellants performed work that is "outside the course of the hiring entity's business" under prong "B" of the ABC test. (*Dynamex, supra,* 4 Cal.5th at p. 957.) Appellants therefore

---

[4] The court in *Cal Cartage* also noted that the statutory scheme that the Legislature enacted in 2020 clearly does not prohibit motor carriers from using independent contractors because it establishes a "business-to-business" exception to the ABC test in Labor Code section 2776. (See *Cal Cartage, supra,* 57 Cal.App.5th at pp. 632–634.) Section 2776 first became effective in September 2020. We therefore presume, without deciding, that this provision would not apply to the claims in this case. However, that fact does not change our analysis. Our Supreme Court did not rely upon the current statutory scheme in *Pac Anchor*, and, as the court in *Cal Cartage* persuasively explained, that decision is dispositive here. (See *Cal Cartage*, at p. 631.)

13

request that we decide this issue as a matter of law rather than remanding to the trial court to consider it.

We agree that, based on the trial record, it appears unlikely that East Coast will be able to meet its burden under the ABC test. As Appellants point out, the testimony at trial showed that East Coast is a trucking company that must have truck drivers to operate.

The trial court also made comments during argument indicating that the court shared this view. The trial court stated to East Coast's counsel that, "[u]nder *Dynamex*, you lose right off the bat because it's the same—your trucking company and your employee truckers; right? . . . Trucking was your client's business."

However, the trial took place under the assumption that the *Borello* test, not the *Dynamex* test, governed whether Appellants were independent contractors. The trial court's comments concerning the effect of the ABC test were therefore hypothetical. And the issue is of course highly factual.[5]

East Coast argues that determining the Appellants' status under the ABC test "raises a host of procedural and substantive issues, e.g., new defenses, that were not litigated below." It

_____

[5] As Appellants point out, courts in other jurisdictions have considered different factors to determine whether work was "outside the course of the hiring entity's business," including "whether the work of the employee is necessary to or merely incidental to that of the hiring entity, whether the work of the employee is continuously performed for the hiring entity, and what business the hiring entity proclaims to be in." (See *Vazquez II, supra,* 986 F.3d at p. 1125.)

claims that it would therefore be unfair for this court to grant what amounts to a "summary judgment" on the issue.**6**

Regardless of our decision on this issue, remand will be necessary. The trial court would need to consider appropriate relief on Appellants' UCL claim even if we were to hold as a matter of law that Appellants were employees under the ABC test. And Appellants' Labor Code claims have yet to be tried.

Because the issue is highly factual; the trial took place under the assumption that the *Borello* test applied; and remand is necessary anyway, we conclude that the best course is to permit the trial court to consider in the first instance whether Appellants were independent contractors under the ABC test. (See *Vazquez II, supra,* 986 F.3d at p. 1122 [remanding for the district court to consider whether the plaintiffs were employees under the *Dynamex* standard "[g]iven the fact-intensive nature of the *Dynamex* inquiry"].) We will therefore remand for that purpose and for further proceedings on Appellants' claims.

---

**6** Citing decisions from other jurisdictions, East Coast argues that one such defense may be based on a showing that Appellants' work was outside the "usual course" of East Coast's business because Appellants performed the work outside of East Coast's *place* of business. The decision in *Dynamex* forecloses that specific argument. (See *Dynamex, supra,* 4 Cal.5th at p. 956, fn. 23.)

## DISPOSITION

The judgment is reversed and the case is remanded for further proceedings on Appellants' complaint. Appellants are entitled to their costs on appeal.

LUI, P. J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

16

Filed 4/1/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ERICK V. PARADA et al., | B296566 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC681293) |
| v. | |
| EAST COAST TRANSPORT INC., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion filed in the above-entitled matter on March 26, 2021, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered.


LUI, P.J.        CHAVEZ, J.        HOFFSTADT, J.